FILED
CLERK, U.S. DISTRICT COURT

3/25/24

CENTRAL DISTRICT OF CALIFORNIA
BY: CS                DEPUTY

David Blachley, pro se
Address: 6333 E VERMONT STREET
LONG BEACH, CA 90803
Phone: 949-350-6577
Email: David@durashutter.com,
David@moreviewshutter.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

DAVID W. BLACHLEY,

           Plaintiff,

   vs.

BLINDS TO GO (U.S.) INC.; BLINDS TO GO INC., Stephen Shiller; Nkere Udofia

           Defendants.

) **CASE NO.: 2; 24-cv-01632-CBM-E**
) **FIRST AMENDED COMPLAINT;**
) **REVIEW AND REVERSAL OF TTAB**
) **DECISION; DECLARATORY JUDGMENT**
) **OF CANCELATION OF MORVIEW MARK**
) **REGISTRATION;  INFRINGEMENT OF**
) **PATENTS; COMMON LAW TRADEMARK**
) **INFRINGEMENT OF THE MORVIEW**
) **MARK; FEDERAL UNFAIR COMPETITION**
) **WITH RESPECT TO THE MORVIEW**
) **MARK; STATUTORY UNFAIR**
) **COMPETITION WITH RESPECT TO THE**
   **MORVIEW TRADEMARK; COMMON LAW**
   **INFRINGEMENT OF THE MORVIEW**
   **TRADE DRESS; BREACH OF CONTRACT;**
   **BREACH OF IMPLIED COVENANT OF**
   **GOOD FAITH AND FAIR DEALINGS;**
   **TRADEMARK COUNTERFEITING AND**
   **DEMAND FOR JURY TRIAL**

---

     Comes now the plaintiff DAVID W. BLACHLEY (hereinafter referred to as "Plaintiff" or "BLACHLEY") and alleges:

### NATURE OF ACTION

    1.     This is an action for declaratory relief; common law trademark infringement; common law trade dress infringement; patent infringement; unfair competition under the laws of the United States (codified at 15 U.S.C. § 1117, et seq.); unfair competition under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; common law unfair competition; and

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

breach of contract.

2.     Plaintiff seeks two forms of relief in this de novo action. First, this is an appeal from a January 2, 2024 decision (the "Decision") of the Trademark Trial and Appeal Board (the "TTAB") in an inter partes cancellation proceeding (the "Proceeding") brought by Plaintiff. A copy of the Decision is attached as **Exhibit A**. According to the TTAB decision, the proceeding was dismissed as sanctions for Plaintiff's alleged failure to provide some documents responsive to requests for production. The Decision concerns an U.S. trademark registration owned by Defendants for the mark MORVIEW, registration No. 6142468 used in connection with Interior window coverings (the "Mark").

3.     Congress allows a losing party in a TTAB inter partes registration decision to appeal by way of a de novo action in federal district court rather than an appeal to the Federal Circuit. Section 21(b)(1) of Lanham Act, 15 U.S.C. § 1071(b)(1); 37 C.F.R. 2.145(c). In such an action, all legal conclusions made by the TTAB are reviewed de novo, and the law applied is that of the Circuit where the district court sits (here, the Ninth Circuit). The Plaintiff in the action also is entitled to plead new related claims so that all disputes regarding cancellation of a registration can be decided in a single action. Plaintiff has opted to both appeal from the Decision and to obtain complete relief from Defendants' attack on his Trademark by initiating this de novo action.

4.     First, the Decision should be reversed for legal error. Specifically, the TTAB's incorrectly dismissed Plaintiff's TTAB action for failure to provide documents responsive to requests for production. Plaintiff produced any and all documents (thousands of documents) which were in his possession. This court should reverse the TTAB's decision and vacate its order of dismissal. As Plaintiff argued to the TTAB, as a matter of law, the final Federal Action judgment dismissing Plaintiff's claim precludes Plaintiff from later asserting a cancellation claim against

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

the same registrations in the TTAB. The Court should conclude that the TTAB committed legal error by sustaining, rather than dismissing, Plaintiff's claims for cancelation.

5.     Second, Plaintiff seeks a final resolution to his 10-year-old trademark dispute with Defendants over Plaintiff's rights to own U.S. MORVIEW mark. It therefore asks the Court to declare that Plaintiff has a legal basis for cancellation of BLINDS TO GO (U.S.) INC.'s MORVIEW mark and declare that BLINDS TO GO (U.S.) INC.'s MORVIEW registration is not valid.

6.     Plaintiff taking a de novo court appeal from a TTAB decision may assert additional claims that are related to the mark in dispute. 15 U.S.C. § 1071(b)(1).

7.     Plaintiff seeks a declaration that Plaintiff prevails on any of the cancellation grounds asserted at the TTAB trial.

8.     The provision of the Lanham Act that authorizes Plaintiff to bring this civil action in federal court also authorizes him to assert additional claims related to the disputed mark(s) so that all such disputes can be decided in one action. Plaintiff asks the Court to issue a declaratory judgment finding that BLINDS TO GO (U.S.) INC. had not valid grounds for registration of the Mark. There can be no dispute that a real, ongoing controversy between Plaintiff and BLINDS TO GO (U.S.) INC. regarding the Mark exists, and clouds Plaintiff's trademark rights, in a way sufficient to authorize the granting of relief under the Declaratory Judgments Act.

**PARTIES**

9.     At all times mentioned in this Complaint Plaintiff DAVID W. BLACHLEY is an individual residing in the city of Los Angeles, within the County of Los Angeles, in the State of California.

10.     On information and belief, Defendant BLINDS TO GO (U.S.) INC.

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

("DEFENDANTS U.S.") is a company incorporated in Delaware. Defendant may be served by its registered agent the Corporation Trust Company at Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

11.     On information and belief, Defendant BLINDS TO GOINC. ("DEFENDANTS") is a company incorporated in Montreal, Quebec, Canada. Defendant may be served at 3510, St. Joseph Blvd. East, Montreal, QC H1X 1W6, Canada.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), and 1362.

13.     This lawsuit is also a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 et seq. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

14.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to the provisions of 28 U.S.C. § 1338(b) insofar as the claims are joined with a substantial and related federal claim arising under the trademark laws of the United States. See 15 U.S.C. § 1051 et seq.

15.     The Court has personal jurisdiction over Defendants for the following reasons: (1) Defendants are present within or has minimum contacts within the State of California and the Central District; (2) Defendants have purposefully availed themself of the privileges of conducting business in the State of California and in this district; (3) Defendants have sought protection and benefit from the laws of the State of California; and (4) Defendants regularly conduct business within the State of California and within this district, and Plaintiff's cause of action arises directly from Defendants' business contacts and other activities in the State of California and in this

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

district.

16.     Defendants, directly and/or through intermediaries, ship, distribute, use, offer for sale, sell, and/or advertises products and services in the United States, the State of California, and the Central District including but not limited to the products infringing Plaintiff's patents and trademarks as detailed below. Upon information and belief,

17.     Defendants have committed trademark and patent infringement in the State of California and in this district; Defendants solicit and have solicited customers in the State of California and in this district; and Defendants have paying customers who are residents of the State of California and this district and who each use and have used the Defendants' products and services in the State of California and in this district.

18.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a). Defendants have transacted business in this district, and has directly and/or indirectly committed acts of patent and trademark infringement in this district.

## FACTS COMMON TO ALL CLAIMS

19.     Plaintiff is actively engaged in the interior window coverings services and manufacturing of window coverings under the mark MORVIEW and MOORE VIEW, and as such Plaintiff applied in International Classes 020 and 040 for the goods and services ("Goods and Services").

20.     Plaintiff is the inventor and patent holder of window shutter Products. See Patents 7,536,766, 8,091,281, 7.987,565, 8,522.478, 6,622,433, 6,854,211 attached as **Exhibit B**. Mentioned patents relate to Shutters. The Plaintiff invented the process of producing shutters which reduces manufacturing time and costs.

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

21.     Plaintiff has been using the mark MORVIEW/MOORE VIEW in the United States exclusively and continuously since at least as early as May 2010 in connection with these Goods and Services, and has not abandoned said mark. Plaintiff pleads common law rights to his MORVIEW mark based on use of the mark in the window coverings industry.

22.     The Plaintiff is an owner of the domain name MORVIEWSHUTTERS.COM that incorporates his common law mark MORVIEW. Plaintiff's website and personal LinkedIn page show products which incorporate MORVIEW mark. See videos advertising products under MORVIEW mark https://vimeo.com/250216866/803fbe1440.

23.     Internet archive reveals that the Plaintiff has been advertising his MORVIEW products on the website MORVIEWSHUTTER.COM, MORVIEWSHUTTERS.COM since October 2017 (before the Defendant filed a trademark application).

24.     Plaintiff invested significant time, money, and effort, to promote the reputation of the marks MORVIEW as widely as possible and to identify the mark MORVIEW as the source of the Goods and Services. As a result of its activities, Petitioner has developed extremely valuable goodwill in the mark MORVIEW throughout the United States.

25.     Defendants own Registration No. 6142468 for the mark MORVIEW in International Classes 020 and 040 for the following goods and services:

> "Interior window coverings, namely, window shades, pleated shades, indoor window blinds, vertical indoor blinds, horizontal indoor blinds, venetian blinds, roller shades and parts thereof; non- metal window accessories, namely, ribs, cords, head rails and bottom rails sold as a unit with indoor window blinds and shades; Indoor window coverings systems comprised of handles, cords, supports, brackets, wands, rollers, pins, rings, locks, tacks and made of textile, wood, metal, plastic, PVC, bamboo, aluminum, and vinyl sold as a unit; Custom indoor blinds, namely, roller blinds; non-metal traverse curtain rods, poles and replacement parts thereof; non-metal brackets, frames, bolts and fasteners for installing window coverings; Non-metal ribs for interior blinds; indoor blinds, namely, roller blinds; non-metal child safety products, namely, string and cord winders for use on blinds, window coverings, and door coverings" in International Class 020, and

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

"Custom manufacturing of window coverings, namely, window shades, pleated shades, window blinds, vertical blinds, horizontal blinds, venetian blinds, roller shades and parts thereof; custom manufacturing of window shutters and fabric valances" in International Class 040.

26.     Defendants claim May 31, 2020 as the date of first use in United States commerce for the mark MORVIEW.

27.     Defendants knew of Plaintiff's prior use of the mark. In 2015 Plaintiff entered into a Licensing Agreement ("Agreement") with Defendants. See **Exhibit C**. The agreement allowed Licensee/Defendants to market Plaintiff's Products using "its own trade-marks and branding" See Section 2(b) of the Agreement.

28.     Defendants failed to perform terms of the agreement. Defendants have counterfeit Plaintiff's Patented Products in an inferior, limited, unsafe and overpriced fashion and marketed them as MORVIEW SHUTTER "DESIGNED IN CALIFORNIA" without Plaintiff's authorization and without paying royalties. Further, Defendants filed the USPTO application for registration of the mark MORVIEW ser. No. 88101200.

29.     On October 15, 2020, Plaintiff filed a Petition to Cancel the United States Trademark Registration No. 6,142,468 for the mark MORVIEW currently owned by BLINDS TO GO (U.S.) INC. Plaintiff requested to cancel DEFENDANTS U.S.'s registration for the mark MORVIEW based on his prior use of the mark.

30.     On July 26, 2021, Plaintiff filed an Amended Petition for cancellation.

31.     In TTAB proceeding, parties were involved in extensive discovery exchange, including production of documents. In response to DEFENDANTS U.S.'s requests for production, Plaintiff produced thousands pages of various documents, demonstrating his prior use of the Mark. At the time of production, Plaintiff provided any and all documents he had in his possession or

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

control. Plaintiff also responded that he continued to investigate the claims and will produced additional documents after completion of investigation.

32.     On October 23, 2023 Plaintiff produced supplemental responses to interrogatories and requests for production naming this document as "Plaintiff's amended petition in response to the October 2 Board's decision on the submission of interrogatories and documents".

33.     Despite these facts, on January 2, 2024 the Board granted DEFENDANTS U.S.'s motion for sanctions and dismissed TTAB proceeding with prejudice.

34.     Defendants were also involved in a long-term scheme of counterfeit products trafficking and theft of access to intellectual property patents, including fraudulent counterfeiting, by Defendants representative Stephen Shiller with help of Vic Chair Nkere Udofia.

35.     Defendants leveraged inside knowledge gained in an inside disclosures and access to Plaintiff's patented components parts tooling, machinery and suppliers, IP Trademark in a failed 2015 partnership agreement.

36.     When discovered DEFENDANTS was running a long-term operation to traffic in fraudulent inferior counterfeit version selling under Plaintiff's common law trademark MorView Shutter and failed repeated attempts to cure.

37.     DEFENDANTS has and continues to imported tens of thousands of fraudulent counterfeit inferior product component parts marked with Plaintiff's patent numbers, Defendants then assembled in Lakewood New Jersey, advertised  consistently since 2016 on its website, catalogs, and videos as MorView Shutter Brand "Designed in California" Mr. Shiller's company resells these products as MorView Shutter to customers in the United States and Canada, falsely representing them as genuinely MorView Shutters "designed in California". This operation has generated millions in revenue year over year from 2016 to the present day.

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

38.     Despite repeated attempts by Plaintiff to cease their production and/or receive compensation, Mr. Shiller has refused to comply. Evidence indicates that Mr. Shiller continuously prolonged negotiations.

39.     During prolonged attempts to cure Defendants scheme unfolded behind the scheme to counterfeit the product, Trademark fraud, theft of access to patents, gain access and control of Plaintiff's IP, machinery and suppliers using them to counterfeit and make Plaintiff's patented component parts and to block Plaintiff's use of his intellectual property rights including sale of his products to Defendants competitors.

40.     The scheme was to

-     Defendants falsified of federal documents at the USPTO in order to obtain a Trademark. Defendants were issued trademark document # 6,142,468

Defendants then instructed the lawyers to draft an injunctive relief that would ban Plaintiff's use of the Trademark provide them access and control of Plaintiff's IP including authorization to use of Plaintiff's patents and trademarks, including control of Plaintiff's supply chain where his machinery equipment tooling was being used to produce patented component parts.

-     Defendants then filed these untrue statements, claiming Defendants somehow had rights to Plaintiff's above mention property, Trademark machinery, and supply chain including blocking Plaintiffs rights to sell Defendants competitor.

-     Defendants then made representation to the court that the documents were true convincing the judge to hand down an order.

-     Defendants then presented these documents to Plaintiff's supply chain himself allowing Defendant continue product counterfeit and trademark theft.

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

41.     Having these controls, Defendants prevented Plaintiff from bringing his products to national retailers due to the 2015 document that gave them exclusive rights to eight states in America, which then represents a dealbreaker with any national retailer interested in Plaintiff's technology. Specifically Home Depot Lowe's both having high interest in Plaintiff's technology.

42.     After three years of unsuccessful attempts to resolve the issue, Plaintiff's lawyer sent a final notice that was ignored. Subsequently, Plaintiff instructed his supply chain partners, who house his equipment and tooling, including authorization to fabricate his patented materials and/or patented component parts, to cease selling to Defendants.

43.     Defendants imported tens of thousands of fraudulent and counterfeit MorView Shutter product component parts from China and resold them to customers in the United States and overseas, falsely representing them as new and genuine.

44.     The fraudulent and counterfeit products sold by Blinds To Go Inc. and Blinds To Go (Canada) Inc. suffer from numerous performance and functionality issues, making them unsafe products. The flawed design causes louvers to not close properly, resulting in gaps between each louver, thereby eliminating a key consumer-relevant patented feature that significantly enhances room darkening and energy efficiency over blinds and shades. Additionally, the fraudulent counterfeit product lacks patented e-commerce technology innovation, which allows for a modernized ready-to-assemble (RTA) flat-pack kit. The use of poor and incorrect hardware causes shutter panels to swing open halfway into the room, posing a safety hazard, especially in rooms where children play. Counterfeit design so poorly altered making it impossible to ship frames unassembled as commonly practiced, Defendant failed to service consumer e-commerce and DIY markets that each of its national competitors do.

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

45.     Additionally, the defendants misappropriated trade secrets by falsely claiming to have interests beyond purchasing Plaintiff's component parts. Under the guise of a typical retail-assembler, the defendants made lavish partnership offers to assist the inventor Plaintiff in his B2B (business to business) ventures, enticing Plaintiff with promises of collaboration and support. These enticements led to trade secret disclosures and unauthorized access to Plaintiff's supply chain, as well as inside knowledge of ongoing negotiations with Defendant's competitors, including introductions facilitated by the defendants themselves. During a visit from the defendant's team from New Jersey to California, where Plaintiff's patented California CARB-ONE laminate material was invented and produced, Patrick Industries Inc. (NASDAQ-PAT) assessed the cost of the material, revealing that it represented approximately one-third the cost of wood shutters. This same commodity laminate materials technology is commonly used in affordable laminate furniture and laminate flooring, marking the industry's first introduction of a laminate shutter—a cordless, child-safe shutter solution advertised as "affordable as blinds", representing likelihood of game-changer replacement trend and motivation of corded blinds and shades.  By misappropriating the inventor's technology and disregarding his vision, the defendants have obstructed consumer access to an affordable cordless shutter solution. Instead of passing on the advancements in lower-cost, greener laminate material over the high cost of wood, the defendants have priced their product up to 84% higher than wood shutters, severely limiting consumer choice. These actions were carried out unfairly, with the defendants making lavish promises to remove Home Depot, two Berkshire Hathaway Companies, and others from the inventor's consideration, all in an effort to prevent the commercialization of a proven California CARB-ONE laminate material technology. By stifling innovation and market competition, the defendants have hindered national retailers from offering the only cordless shutter solution capable of contributing to the

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

elimination of child deaths caused by the reported 200 million recalled corded blinds and shades in millions of American homes. This contravenes the inventor's vision to create a replacement trend, delivering a famous premium home improvement product category (shutters) as "affordable as blinds" and aligning with inventors over 15 year mission to enhance child safety in homes across the country. Furthermore, Blinds To Go Inc.'s and Stephen Shiller's actions have resulted in severe financial repercussions, causing substantial losses and damage to Plaintiff's reputation in the market. Despite attempts to settle the matter civilly, Defendants have persisted in their illicit activities, which extend beyond trademark and patent infringement to include theft of intellectual property and fraudulent procurement of court orders.

46.   Additionally, during negotiations, Mr. Shiller and DEFENDANTS Company engaged in a long-term scheme to defraud and manipulate legal processes to gain control of Plaintiffs intellectual property rights. Defendants falsified federal documents at the USPTO to obtain a trademark, drafted injunctive relief orders to gain access to Plaintiff's IP, including authorization to use Plaintiff's patents and trademarks, and filed false statements with the court to claim rights to Plaintiff's property. This manipulation has effectively prohibited Plaintiff from bringing his products to national retailers, damaging his business and reputation significantly.

**COUNT I**
**Review and Reversal of the TTAB Decision**
**(15 U.S.C § 1071(b)(1) AND 37 C.F.R. § 2.145)**

47.   Plaintiff incorporates the above paragraphs herein by reference.

48.   Count I seeks review of the TTAB Decision (attached hereto as **Exhibit A**), reversal of that decision for legal error.

49.   On October 15, 2020, Plaintiff filed a Petition to Cancel the United States Trademark Registration No. 6,142,468 for the mark MORVIEW currently owned by BLINDS TO

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

GO (U.S.) INC. Plaintiff requested to cancel DEFENDANTS U.S.'s registration for the mark MORVIEW based on his prior use of the mark.

50.     On July 26, 2021, Plaintiff filed an Amended Petition for cancellation.

51.     In TTAB proceeding, parties were involved in extensive discovery exchange, including production of documents. In response to DEFENDANTS U.S.'s requests for production, Plaintiff produced thousands pages of various documents, demonstrating his prior use of the Mark. At the time of production, Plaintiff provided any and all documents he had in his possession or control. Plaintiff also responded that he continued to investigate the claims and will produced additional documents after completion of investigation.

52.     On October 23, 2023 Plaintiff produced supplemental responses to interrogatories and requests for production naming this document as "Plaintiff's amended petition in response to the October 2 Board's decision on the submission of interrogatories and documents".

53.     Despite these facts, on January 2, 2024 the Board granted DEFENDANTS U.S.'s motion for sanctions and dismissed TTAB proceeding with prejudice.

54.     Therefore, the January 2, 2024 TTAB Decision should be reversed and vacated.

**COUNT II**
**Declaratory Judgment of Cancelation of MORVIEW mark registration No. 6142468**
**(28 U.S.C. § 2201)**

55.     Plaintiff incorporates the above paragraphs herein by reference.

56.     Count II seeks declaratory relief against DEFENDANTS U.S.'s Mark.

**Prior use of the Mark.**

57.     Plaintiff's date of first use of his mark MORVIEW/ MOORE VIEW in commerce of at least as early as May 2010 is prior to the date of DEFENDANTS U.S.'s claimed date of first use of May 31, 2020, by approximately 10 years.

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

58.     Plaintiff has made exclusive and continuous use of MORVIEW/MOORE VIEW in commerce in connection with his Good and Services in the United States since at least as early as May 2010, and as such has priority.

**Likelihood of confusion**.

59.     DEFENDANTS U.S.'s mark is identical to the mark used by Plaintiff in Plaintiff's use in commerce for the interior window coverings and manufacturing of window coverings industry.

60.     Plaintiff's use and promotion of his MORVIEW/MOORE VIEW Mark has led to the establishment of substantial goodwill and consumer recognition in the mark "MORVIEW".

61.     Plaintiff's first use of his Mark in connection with the interior window coverings and manufacturing of window coverings is well-prior to DEFENDANTS U.S.'s Earliest Priority Date.

62.     Plaintiff had established rights in his MORVIEW Mark prior to DEFENDANTS U.S.'s stated Earliest Priority Date.

63.     DEFENDANTS U.S.'s Mark subsumes Plaintiff's MORVIEW Mark in its entirety.

64.     DEFENDANTS U.S.'s Mark so closely resembles Plaintiff's Mark as to be likely, when used in connection with Applicant's goods and services, to cause confusion, or to cause mistake, or to deceive under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d).

65.     Registration of MORVIEW Mark in Classes 020 and 040 resulted in damage to Plaintiff because registration for DEFENDANTS U.S.'s Mark by DEFENDANTS U.S. supports statutory rights in favor of DEFENDANTS U.S. in connection with the interior window coverings and manufacturing of window coverings, and in violation and derogation of Plaintiff's prior and

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

superior rights in his MORVIEW Mark, and because Plaintiff's extensive use of his MORVIEW mark establishes valid common law rights for Plaintiff in that mark.

66.     DEFENDANTS U.S. was well aware of the prior use in commerce by Plaintiff and filed this Application despite having knowledge of Plaintiff's mark and prior rights and sought to mislead the USPTO by filing the Application.

67.     DEFENDANTS U.S. had contractual relationship with Plaintiff and pursuant to the licensing agreement it could use Plaintiff's intellectual property rights within certain bounds that did not include the use of Plaintiff's trademark.

68.     DEFENDANTS U.S. was involved in multiple rights disputes with Plaintiff before registration the mark. Plaintiff has been providing services and selling products related to window coverings under the mark MORVIEW since the early 2010s. This constitutes prima facie evidence of actual confusion in the marketplace, and has caused severe damage to Plaintiff's income, reputation, and goodwill.

69.     Bad faith is not an independent claim in this opposition filing but rather part of the overall necessary analysis regarding the likelihood-of-confusion.

70.     DEFENDANTS U.S. had knowledge of Plaintiff's prior rights at the time of filing and Defendant knew it would benefit from the reputation and goodwill Plaintiff generated when promoting Plaintiff's products.

71.     In view of the similarity of the respective marks, identical channels of trade and the identical goods and services offered for sale by the respective parties, DEFENDANTS U.S.'s mark MORVIEW is identical to Plaintiff's mark MORVIEW, therefore to be likely to cause confusion, or to cause mistake, or to deceive as to source by suggesting that DEFENDANTS U.S.'s goods and services are associated with or approved, endorsed, affiliated, authorized, or

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

sponsored by Plaintiff; and Plaintiff has made exclusive prior and continuous use of its mark MORVIEW and has not abandoned such.

72.    As Plaintiff's rights in his MORVIEW mark are well established and exercised publicly by Plaintiff, DEFENDANTS U.S.'s use of the mark creates a likelihood of confusion in the marketplace and therefore opposition based on likelihood of confusion should be sustained. Additionally, registration should be canceled as this mark was registered in bad faith adding to the likelihood of confusion on this mark.

**Likelihood of dilution**.

73.    Well-prior to DEFENDANTS U.S.'s registration and intent to use, Plaintiff's MORVIEW Mark became distinctive and famous in relation to window coverings under the Trademark Act, 15 U.S.C. § 1125(c).

74.    DEFENDANTS U.S.'s registration of MORVIEW Mark within the stated categories is likely to cause dilution of Plaintiff's well-established rights in his MORVIEW Mark under the Trademark Act, 15 U.S.C. § 1125(c).

75.    As Plaintiff's rights in his MORVIEW mark were established in the marketplace prior to Defendant's first stated use, a registration of DEFENDANTS U.S.'s mark causes dilution of Plaintiff's rights, and therefore the registration should be canceled.

**Fraud**.

76.    DEFENDANTS U.S. knowingly made a false statement about its application here as DEFENDANTS U.S. knew about the Plaintiff's prior rights and used the registration of Mark in an attempt to block the Plaintiff, rightful owner, from obtaining registrations.

77.    The parties at hand have long tried to negotiate a coexistence relationship and rather than work out a business relationship amicably DEFENDANTS U.S. has proceeded to

deceive the USPTO in Defendant's Application.

78.    DEFENDANTS U.S. made the following declaration with its application knowing full well of Plaintiff's outstanding claims and prior use of Plaintiff's MORVIEW mark. "To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

79.    Our case law makes it clear that "[f]raud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representation of fact in connection with his application." Torres v. Cantine Torresella S.r.l. , 1 U.S.PQ.2d 1483, 1484 (Fed. Cir. 1986).

80.    In In Re: Bose Corporation, the Federal Circuit held that "[t]here is no fraud if a false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive." In re Bose Corp (580 F3d 1240, 91 USPQ2d 1938, 1941 (Fed Cir 2009)) In the present matter, there was not merely an honest misunderstanding, the DEFENDANTS U.S. had long known about Plaintiff's prior rights and the parties had long communicated regarding this matter.

81.    Plaintiff has previously put DEFENDANTS U.S. on notice that using his MORVIEW mark, would cause Plaintiff to defend and seek all legal remedies to protect Plaintiff first used rights. DEFENDANTS U.S., having knowledge about Plaintiff's right decided to register MORVIEW mark making false statement to USPTO that it was not aware about any persons who could claim rights to use the mark.

82.    DEFENDANTS U.S.'s mark should be canceled as this mark has been fraudulently

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

registered with the USPTO.

83.     The Court should therefore determine and declare that that a) Plaintiff has made exclusive and continuous use of MORVIEW/MOORE VIEW in commerce in connection with his Good and Services in the United States since at least as early as May 2010, and as such has priority; b) DEFENDANTS U.S.'s use of the Mark creates a likelihood of confusion in the marketplace; c) a registration of DEFENDANTS U.S.'s mark causes dilution of Plaintiff's rights; and d) the Mark has been fraudulently registered with the USPTO.

## COUNT III
### Infringement of patents

84.     Plaintiff incorporates the above paragraphs herein by reference.

**Patent-In-Suit**

85.     On May 26, 2009, United States Patent No 7,536,766 B1 (the '766 Patent) was duly and legally issued by the United States Patent and Trademark Office. The '766 Patent is titled "Removable louver shutter assembly method."

86.     On January 10, 2012, United States Patent No 8,091,281 B1 (the '281 Patent) was duly and legally issued by the United States Patent and Trademark Office. The '281 Patent is titled "Removable louver shutter."

87.     On August 2, 2011, United States Patent No 7.987,565 B1 (the '565 Patent) was duly and legally issued by the United States Patent and Trademark Office. The '565 Patent is titled "Grooved-stile shutter."

88.     On September 3, 2013, United States Patent No 8,522,478 B1 (the '478 Patent) was duly and legally issued by the United States Patent and Trademark Office. The '478 Patent is titled "Ready to assemble shutter."

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

89.    On September 23, 2003, United States Patent No 6,622,433 B2 (the '433 Patent) was duly and legally issued by the United States Patent and Trademark Office. The '433 Patent is titled "Prefinished medium density fiberboard shutter."

90.    On February 15, 2005, United States Patent No 6,854,211 B1 (the '211 Patent) was duly and legally issued by the United States Patent and Trademark Office. The '211 Patent is titled "Removable louver and tilt control."

91.    All listed patents are collectively referred to as "Patents" or "Patents-in-Suit".

92.    Plaintiff David Blachley is the assignee of all right, title and interest in the Patents, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the Patents. Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for infringement of the Patents by Defendants.

93.    The present invention relates to Interior window coverings.

94.    The inventions disclosed in the Patent-in-Suit were not well-understood, routine, or conventional.

95.    Moreover, the inventions taught in the Patents-in-Suit cannot be performed with pen and paper or in the human mind.

**Accused Products.**

96.    Defendants make, use, offer for sale and sell in the U.S. products, systems, and/or services that infringe the Patents-in-Suit, including, but not limited to their Blinds, Shades, and Shutters (collectively, the "Accused Product" or "Accused Instrumentality").

**Defendants' knowledge of the Patents.**

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

97.     Defendants knew of Plaintiff's prior use of the mark. In 2015 Plaintiff entered into a Licensing Agreement ("Agreement") with DEFENDANTS U.S. Defendants received access to Plaintiff's inventions and fully incorporated Plaintiff's technology in their products.

98.     Based on these allegations, it is reasonably plausible that Defendants knew of the Patents. Alternatively, to the extent Defendants claim Defendants were not aware of the Patents-in-Suit despite the above examples, Defendants were willfully blind as to the existence of the Patents.

**Infringement of Patents.**

99.     Patents are valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office ("USPTO"). Patents are presumed valid and enforceable. See 35 U.S.C. § 282.

100.    Plaintiff is the owner of Patents and possesses all rights of recovery under the Patents, including the exclusive right enforce the Patents patent and pursue lawsuits against infringers.

101.    Without a license or permission from Plaintiff, Defendants have infringed and continue to infringe on one or more claims of the Patents—directly, contributorily, and/or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the patented products, in violation of 35 U.S.C. § 271.

**Direct Infringement – 35 U.S.C. § 271(a)**

102.    Without a license or permission from Plaintiff, Defendants have infringed and continue to directly infringe on one or more claims of the Patents by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including,

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

without limitation, one or more of the patented products, in violation of 35 U.S.C. § 271.

103.    Defendants have been and now is directly infringing by, among other things, incorporating all of the elements of the Patents.

**Induced Infringement – 35 U.S.C. § 271(b)**

104.    Defendants have been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the Patents in the State of California, in this judicial District, and elsewhere in the United States, by, among other things, making, using, offering for sale, and/or selling, without license or authority, products incorporating the accused technology. End users include, for example, Defendants' customers and other third parties interacting with the accused technology.

105.    Defendants had pre-suit knowledge of the Patents-in-Suit as explained above. Defendants' post-suit knowledge is inferred from filing of this complaint. See In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1345 (Fed. Cir. 2012) (finding that defendant's post-suit knowledge can be inferred from filing of the suit). Alternatively, to the extent Defendants claim it was not aware of the Patents-in-Suit despite the above examples, Defendants were willfully blind as to the existence of the Patents.

106.    Defendants took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention. See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 932 (2005) ("[I]t may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

107.    And Defendants teaches third parties how to use the device in an infringing way.

108.    The allegations herein support a finding that Defendants induced infringement of

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

the Patents. See Power Integrations v. Fairchild Semiconductor, 843 F.3d 1315, 1335 (Fed. Cir. 2016) ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement [e.g., advertisements, user manuals] directed to a class of direct infringers [e.g., customers, end users] without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

**Contributory Infringement – 35 U.S.C. § 271(c)**

109.   On information and belief, Defendants contributorily infringe on Plaintiff's Patents. Defendants had pre-suit knowledge of the Patent-in-Suit as explained above. Defendants' post-suit knowledge is inferred from filing of this complaint. See In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1345 (Fed. Cir. 2012) (finding that defendant's post-suit knowledge can be inferred from filing of the suit). Alternatively, to the extent Defendants claim Defendants were not aware of the Patents-in-Suit despite the above examples, Defendants were willfully blind as to the existence of the Patents.

110.   On information and belief, Defendants' implementation of the accused functionality has no substantial non-infringing uses. See, e.g., Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1321 (Fed. Cir. 2009) (holding that the "substantial non-infringing use" element of a contributory infringement claim applies to an infringing feature or component, and that an "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses).

**Willful Infringement**

111.   On information and belief, Defendants had pre-suit knowledge of the Patents-in-Suit as explained above. Defendants' post-suit knowledge is inferred from filing of this complaint. See In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1345 (Fed.

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Cir. 2012) (finding that defendant's post-suit knowledge can be inferred from filing of the suit). Alternatively, to the extent Defendants claim Defendants were not aware of the Patents-in-Suit despite the above examples, Defendants were willfully blind as to the existence of the Patents.

112.    Despite knowing that Defendants were infringing the Patents-in-Suit, Defendants made no effort to license Plaintiff's technology.  Defendants have made no effort to design their products or services around the Patents. These actions demonstrate Defendants' blatant and egregious disregard for Plaintiff's patent rights.

113.    Despite their knowledge of the Patents, Defendants have sold and continue to sell the Accused Product in complete and reckless disregard of Plaintiff's patent rights. As such, Defendants have acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the Patents, justifying an award to Plaintiff of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

**Plaintiff Suffered Damages**

114.    Defendants' acts of infringement of the Patents have caused damage to Plaintiff, and Plaintiff is entitled to recover from Defendants the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendants' infringement of Plaintiff's exclusive rights under the Patents will continue to damage Plaintiff causing it irreparable harm for which there is no adequate remedy at law, warranting an injunction from the Court.

///

///

**COUNT IV**

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**Common Law Trademark Infringement of the MORVIEW Mark**

115.   Plaintiff incorporates the above paragraphs herein by reference.

116.   Plaintiff has continuously used the MORVIEW mark in commerce in connection with Plaintiff's products/services, since at least as early as May 2010 and, accordingly, has established common law trademark rights in the MORVIEW mark.

117.   Defendants' unauthorized use in commerce of the MORVIEW mark in association with Defendants' products constitutes infringement of Plaintiff's common law trademark rights, misappropriates the valuable goodwill developed by Plaintiff in the MORVIEW mark, and is likely to cause confusion among the relevant consuming public.

118.   Defendants were, or should have been, aware of Plaintiff's use of and corresponding rights in the MORVIEW mark. Defendants' acts aforesaid, including using names, terms, and/or marks that are identical or, at least, confusingly similar to MORVIEW mark for identical or substantially similar goods and services, constitute willful infringement of Plaintiff's rights in the MORVIEW mark.

119.   Defendants' acts of willful infringement of Plaintiff's rights in the MORVIEW mark have caused and, unless restrained, will continue to cause great and irreparable injury to Plaintiff, Plaintiff's business, and to the goodwill and reputation of Plaintiff in an amount that cannot be ascertained at this time, leaving Plaintiff no adequate remedy at law.

120.   Defendants' acts are the proximate cause of such injury and damage.

121.   By reason of the foregoing, Plaintiff is entitled to preliminary and permanent injunctive relief against Defendants, and anyone acting in concert with Defendants, to restrain further acts of infringement of Plaintiff's rights and, after trial, to recover any damages proven to have been caused by reason of Defendants' aforesaid acts of infringement and any enhanced

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

damages justified by the willful and intentional nature of such acts.

**COUNT V**

**Federal Unfair Competition with Respect to the MORVIEW Mark (15 U.S.C. § 1125)**

122. Plaintiff incorporates the above paragraphs herein by reference.

123. By its knowing and intentional unauthorized imitation, adoption, and use of Plaintiff's MORVIEW mark and/or marks which are confusingly similar to Plaintiff's MORVIEW mark in association with Defendants' goods and services, Defendants have and continues to falsely designate its goods and services as being derived or affiliated with those of the Plaintiff.

124. Defendants' use of the MORVIEW mark is likely to cause and/or has caused relevant consumers to mistakenly believe that Defendants have an affiliation with Plaintiff, that Defendants' business is sponsored or approved by Plaintiff, or that Defendants are otherwise associated with or has obtained permission from Plaintiff to use the MORVIEW mark in connection with the sale of Defendants' goods and services.

125. By engaging in the unauthorized activities described above, Defendants have made, and continues to make, false, deceptive, and misleading statements constituting false representations and false advertising made in connection with the sale of goods or services distributed in interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Furthermore, in view of the notices provided to Defendants by the acts of Plaintiff, such activities were, and remain, willful and intentional.

126. Defendants' willful and intentional acts of unfair competition, false advertising, and false designation of origin have caused and are causing great and irreparable injury and damage to Plaintiff's business and its goodwill and reputation in an amount that cannot be ascertained at this time and, unless preliminarily and permanently restrained, will cause further

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1  irreparable injury and damage, leaving Plaintiff with no adequate remedy at law.

2      127.   By reason of the foregoing, Plaintiff is entitled to injunctive relief against

3  Defendant, and anyone acting in concert with Defendants, to restrain further acts of unfair

4  competition, false advertising, and false designation of origin and, after trial, to recover any

5  damages proven to have been caused by reason of Defendants' aforesaid acts, and to recover

6  enhanced damages based on Defendants' willful, intentional, and/or grossly negligent acts.

### COUNT VI
### Statutory Unfair Competition with Respect to the MORVIEW Mark (Cal. Bus. & Prof. Code § 17200)

      128.   Plaintiff incorporates the above paragraphs herein by reference.

      129.   Through its unauthorized use of the MORVIEW mark, as well as by continuing to engage in a willful and concerted effort to trade on Plaintiff's goodwill copying and/or imitating Plaintiff's MORVIEW mark, Defendants have engaged in unlawful and unfair business acts or practices in violation of Cal. Bus. & Prof. Code § 17200.

      130.   Defendants were, or should have been, aware of Plaintiff's use of and corresponding rights in the MORVIEW mark. Defendants' acts aforesaid constitute willful and intentional violation of Cal. Bus. & Prof. Code § 17200.

      131.   Defendants' willful and intentional violation of Cal. Bus. & Prof. Code § 17200 has caused and is causing great and irreparable injury and damage to Plaintiff's business and its goodwill and reputation in an amount that cannot be ascertained at this time and, unless preliminarily and permanently restrained, will cause further irreparable injury and damage, leaving Plaintiff with no adequate remedy at law.

      132.   Defendants' acts are the proximate cause of such injury and damage.

      133.   By reason of the foregoing, Plaintiff is entitled to injunctive relief against

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Defendants, and anyone acting in concert with Defendants, to restrain further violation of Cal. Bus. & Prof. Code § 17200.

**COUNT VII**

**Common Law Infringement of the MORVIEW Trade Dress**

134.    Plaintiff incorporates the above paragraphs herein by reference.

135.    Plaintiff's MORVIEW Trade Dress is non-functional and is inherently distinctive or has acquired secondary meaning through its extensive, exclusive use by Plaintiff and its association by purchasers with Plaintiff's goods and services.

136.    Plaintiff has continuously used the MORVIEW Trade Dress in commerce in connection with Plaintiff's goods and services since at least as early as May 2010, and, accordingly, has established common law trade dress rights in the MORVIEW Trade Dress.

137.    Defendants' unauthorized use in commerce of the MORVIEW Trade Dress constitutes infringement of Plaintiff's common law trade dress rights, misappropriates the valuable goodwill developed by Plaintiff in the MORVIEW Trade Dress, and is likely to cause confusion among the relevant consuming public.

138.    Defendants were, or should have been, aware of Plaintiff's use of and corresponding rights in the MORVIEW Trade Dress. Defendants' acts aforesaid, including incorporating trade dress in their commercial that is identical or, at least, confusingly similar to Plaintiff's MORVIEW Trade Dress for identical or substantially similar goods and services, constitutes willful infringement of Plaintiff's rights in the MORVIEW Trade Dress.

139.    Defendants' acts of willful infringement of Plaintiff's rights in the MORVIEW Trade Dress have caused and, unless restrained, will continue to cause great and irreparable injury to Plaintiff, Plaintiff's business, and to the goodwill and reputation of Plaintiff in an amount that

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

cannot be ascertained at this time, leaving Plaintiff no adequate remedy at law.

140.    Defendants' acts are the proximate cause of such injury and damage.

141.    By reason of the foregoing, Plaintiff is entitled to preliminary and permanent injunctive relief against Defendants, and anyone acting in concert with Defendants, to restrain further acts of infringement of Plaintiff's rights and, after trial, to recover any damages proven to have been caused by reason of Defendants' aforesaid acts of infringement and any enhanced damages justified by the willful and intentional nature of such acts.

## COUNT VIII
### Breach of contract

142.    Plaintiff incorporates the above paragraphs herein by reference.

143.    Plaintiff and Defendants entered into a licensing agreement ("Agreement"), as described above.

144.    As part of the Agreement, Defendants agreed to pay royalties to Plaintiff as set forth in Section 4 of the Agreement.

145.    Defendants have failed, without justification, to pay royalties to Plaintiff under Section 4 of the Agreement.

146.    Defendants have adequately and substantially performed all of their obligations under the Agreement.

147.    Defendants further breached the agreement by failing to use Plaintiff's intellectual property according to the Agreement.

148.    Defendants breached the Agreement, causing Plaintiff damages in excess of $100,000.00, the exact amount to be proven at trial.

## COUNT XI
### Breach of implied covenant of good faith and fair dealing

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

149. Plaintiff incorporates the above paragraphs herein by reference.

150. In every contract or agreement, including those at issue here, there is an implied promise of good faith and fair dealing, which means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.

151. Defendants breached the contract by breaching their duty of good faith, as described above.

152. Plaintiff was harmed as a result of these breaches, as described above.

153. As a result of Defendants' breaches, Plaintiff seeks actual damages in an amount to be determined at trial.

**COUNT XII**
**Trademark Counterfeiting 15 U.S.C. § 1114**

154. Plaintiff incorporates the above paragraphs herein by reference.

155. Defendants have knowingly, intentionally, and without Plaintiff's consent, used in commerce reproductions, counterfeits, and/or copies and/or spurious designations that are identical with or substantially indistinguishable from Plaintiff's marks in connection with the sale, offer for sale, distribution, advertising, or promotion of goods covered by the Plaintiff's marks. Defendants' use causes confusion or mistake or deceives consumers, causing consumers to believe that Defendants' counterfeit merchandise is affiliated with, sponsored by, authorized or approved by, or is otherwise associated with Plaintiff's despite the fact that it is not.

156. Defendants have intentionally used these reproductions, counterfeits, and/or copies and/or spurious designations that are identical with, or substantially indistinguishable from the Plaintiff's marks, knowing Defendants are counterfeit, in connection with the advertisement, promotion, sale, offering for sale, and distribution of goods.

157.    Defendants used the Plaintiff's marks to advertise, promote, offer for sale, distribute, and sell goods bearing counterfeit marks without Plaintiff's consent.

158.    Defendants' use of counterfeit marks was willful and done with the knowledge that the marks are counterfeit. As such, Defendants' acts constitute willful trademark counterfeiting in violation of 15 U.S.C. § 1114 et seq.

159.    Defendants' acts as alleged herein constitute use in commerce of the Plaintiff's marks.

160.    Plaintiff has suffered damages in an amount to be determined or in the statutory amount allowed pursuant to 15 U.S.C. § 1117(a)-(b), or alternatively, statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c).

161.    Plaintiff is also entitled to disgorge Defendants' profits derived from their unlawful conduct and/or Plaintiff's lost profits from sales of genuine goods due to Defendants' conduct, trebled, to the fullest extent allowable by law.

162.    As a direct result of Defendants' willful and unlawful actions, Plaintiff has suffered and continues to suffer irreparable harm and damages, including damage to and diminution of the Plaintiff's marks, lost sales, and loss of brand control. Plaintiff's remedy at law is not adequate to compensate for injuries inflicted by Defendants. Thus, Plaintiff is entitled to injunctive relief.

## COUNT XIII
## Trademark Counterfeiting 15 U.S.C. § 1114

163.    Plaintiff incorporates the above paragraphs herein by reference.

164.    Plaintiff is the owner of the MorView marks.

165.    Defendants' use of the Plaintiff's marks has caused confusion in the marketplace, is likely to cause both confusion and mistake, is likely to deceive consumers or result in the belief

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

that Defendants are legitimately connected with, sponsored by, or licensed or approved by Plaintiff. As a result of Defendants' unauthorized use of the Plaintiff's marks, the public is likely to be misled and confused as to the source, sponsorship, or affiliation of Defendants' counterfeit merchandise.

166.    Defendants' use was done willfully and with knowledge that such use would and was likely to cause confusion and deceive the relevant audience.

167.    As a direct and proximate result of Defendants' trademark infringement and false designation of origin, Plaintiff has been damaged within the meaning of 15 U.S.C. § 1125(a).

168.    Plaintiff has suffered damages in an amount to be established after proof at trial.

169.    Plaintiff is further entitled to disgorge Defendants' profits for their willful sales and unjust enrichment. In addition, disgorgement is warranted to deter further infringement by Defendants and others similarly situated.

170.    This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that Defendants' acts were willful, in willful blindness and reckless disregard, and taken in bad faith, entitling Plaintiff to his attorneys' fees and an enhancement of damages, including a trebling of its damages and/or disgorged profits. Plaintiff is also entitled to reasonable royalties as damages.

171.    As a direct result of Defendants' willful and unlawful actions, Plaintiff has suffered and continues to suffer irreparable harm, including damage to and diminution in value of the Plaintiff's marks. Plaintiff's remedy at law is not adequate to compensate for injuries inflicted by Defendants. Thus, Plaintiff is entitled to injunctive relief.

**PRAYER FOR RELIEF:**

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**WHEREFORE**, Plaintiff respectfully prays for judgments against all Defendants, jointly and severally on each separate cause of action, as follows:

1) Reversing the January 2, 2024 Decision of the TTAB;

2) Determining and declaring that a) Plaintiff has made exclusive and continuous use of MORVIEW/MOORE VIEW in commerce in connection with his Good and Services in the United States since at least as early as May 2010, and as such has priority; b) DEFENDANTS U.S.'s use of the Mark creates a likelihood of confusion in the marketplace; c) a registration of DEFENDANTS U.S.'s mark causes dilution of Plaintiff's rights; and d) the Mark has been fraudulently registered with the USPTO.

3) Enter a declaration that Defendants have directly infringed, contributorily infringed, and/or induced infringement of one or more claims of the Patents;

4) A preliminary and permanent nationwide injunction enjoining Defendant, its employees, agents, officers, directors, attorneys, representatives, successors, affiliates, subsidiaries and assigns, and all those in concert or participation with any of them, from:

   a) imitating, copying, using, reproducing, registering, attempting to register and/or displaying the mark and designation MORVIEW, or any mark or designation which colorably imitates or is confusingly similar to this mark and designations, including, without limitation, MORVIEW alone or in combination with any other term(s), word(s), name(s), logo(s), symbol(s), device(s), designation(s) and/or design(s) in any manner whatsoever;

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

b) using any other false description or representation or any other things calculated or likely to cause confusion, deception, or mistake in the marketplace with regard to Plaintiff's MORVIEW mark;

c) airing their MORVIEW, or any other commercial that infringes the MORVIEW Trade Dress or Plaintiff's copyrights in the MORVIEW;

d) airing any commercial calculated or likely to cause confusion, deception, or mistake in the marketplace with regard to the MORVIEW; and

e) using any other false description or representation or any other things calculated or likely to cause confusion, deception, or mistake in the marketplace with regard to the MORVIEW Trade Dress;

5) An order directing Defendants to deliver up for impoundment and destruction all materials and matter in its possession or custody or under its control that infringe Plaintiff's trademark, trade dress, and copyrights, including, without limitation, all of Defendants' marketing materials bearing the MORVIEW mark and all copies of Defendants' MORVIEW;

6) An order directing that Defendants file with the Court and serve upon counsel for Plaintiff within thirty (30) days after the entry of such order or judgment, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction(s);

7) Enter a judgment awarding Plaintiff all damages adequate to compensate it for Defendants' infringement of, direct or contributory, or inducement to infringe, but not less than $400,0000 and a reasonable royalty, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

8)  Enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendants' willful infringement of the intellectual property; and

9)  Award Plaintiff all other relief that the Court may deem just and proper.

## JURY DEMAND

The United States demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated: March 25, 2024

By:

David W. Blachley

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**