UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Case No. 2:24-cv-01632-CBM (MRWx)

# PLAINTIFF'S NOTICE OF MATERIAL POST-TRIAL DEVELOPMENTS AND REQUEST THAT COURT DEFER RULING PENDING SUPPLEMENTAL FILING UNDER RULE 15(d)

**TO THE HONORABLE COURT:**

Plaintiff David W. Blachley, appearing pro se, respectfully submits this Notice to inform the Court of material post-pleading developments and to request deferral of any ruling on pending motions or causes of action until Plaintiff files a forthcoming Motion for Leave to Supplement under Federal Rule of Civil Procedure 15(d).

## I. POST-PLEADING DEVELOPMENTS

Since the filing of Plaintiff's operative complaint, a 10-day trial was conducted in the Superior Court of Québec (Case No. 500-17-110344-9) involving the same Defendants, including Stephen Shiller and Nkere Udofia, and arising from the same 2015 joint venture and commercialization agreement at issue in this case.

The Québec trial concluded in May 2025 and resulted in sworn testimony and internal exhibits confirming that Defendants:

1

- Never intended to perform their contractual obligations;
- Sabotaged the commercialization of Plaintiff's patented shutter system;
- And used Plaintiff's technology and brand in false advertising campaigns while refusing to pay any wages, royalties, or profit share.

Key evidence includes:

- Testimony by Defendant Stephen Shiller admitting:
    - Shutter sales constituted less than 1% of BTG's total volume;
    - BTG lost money on every sale and only offered the product in 8 states through a "shop-from-home" program, with no online or retail sales;
    - BTG advertised the MorView shutter at $38/sq ft, despite offering it in a noncompetitive, restricted format that was never approved by Plaintiff in violation of 1(a), and other violations of partnership commercialization agreement terms;
- Exhibit U-11, documenting unauthorized design alterations that eliminated Plaintiff's patented performance features, including thermal efficiency and modular assembly;
- Testimony by Mayte Jennings and Nkere Udofia, and Exhibits D-24, D-26, and P-224, which confirm deliberate obstruction of commercialization, false statements under oath, and a pattern of commercial fraud.

## II. RULE 15(d) MOTION FORTHCOMING

On June 13, 2025, Plaintiff notified Defendants' counsel of his intent to file a Rule 15(d) motion to introduce this post-pleading evidence into the California record. In compliance with Local Rule 7-3, Plaintiff will submit that motion on or after June 20, 2025, with:

- Québec trial transcripts and sworn testimony;
- Exhibits U-11, D-24, D-26, and P-224;

- And Plaintiff's June 13, 2025 Post-Trial Motion in Québec.

---

## III. REQUEST TO DEFER RULING

Plaintiff acknowledges that this Court may already be prepared to rule fully in his favor based on the existing record, which includes sworn allegations and documentary evidence of unpaid wages, commercial sabotage, and fraud by Defendants. If the Court finds the current record sufficient to conclude that Defendants owe wages, committed fraud, breached their obligations, and failed to pay Plaintiff his due wages and profit share, then Plaintiff welcomes such a ruling in the interest of judicial efficiency.

However, if the Court has any doubt as to whether Defendants acted in bad faith, committed fraud, or violated their duties under the 2015 agreement, Plaintiff invokes his rights under Federal Rule of Civil Procedure 15(d) and respectfully demands that no ruling be entered until the post-trial Québec evidence and testimony are fully reviewed.

Further, if the Court has any doubt as to the true nature of the 2015 agreement itself, Plaintiff clarifies that it was not an arms-length license. It was a joint venture business and product development partnership, supported by a $150,000 zero-interest loan, secured by a lien on all current and future intellectual property, and governed by exclusive purchase agreement terms. These included co-commercialization duties, royalty obligations, and joint performance milestones—not passive IP rights.

This is not a delay tactic. It is a necessary step to ensure the Court sees the full truth before issuing any final decision.

Additionally, Plaintiff reaffirms and notifies this Court that although the 2015 agreement was labeled a "Licensing Agreement," that label was drafted by Defendants and caused confusion that was corrected during the Québec trial. The parties' actual conduct, internal emails, and financial structure confirm the existence of a joint commercialization partnership, not a standard license.

Defendants maintained exclusive control of Plaintiff's patented shutter system for nearly 10 years, refused to pay wages, denied profit-sharing, and eliminated royalties. They exploited the label of "licensing" while performing none of the commercial duties required under the actual terms.

## IV. SUMMARY OF FRAUD AND BAIT-AND-SWITCH SCHEME

Defendants used the 2015 joint venture agreement not to sell my shutter product — but to block competitors, bait customers, and keep control of my technology without ever performing.

- They only sold the shutter in 8 states, not in any of their 80+ retail stores or online.
- They limited the product offering to less than 1% of their normal selection, and priced it at nearly three times the agreed price, far above market rates.
- As a result, the product could not succeed — it was set up to fail.
- At the same time, they ran national advertising using the "MorView" shutter name, bringing over 100,000 customers to their website, then diverted those customers into buying blinds instead.

- In sworn testimony during the 2025 Québec trial, BTG executives admitted:
    - The shutter program represented less than 1% of total sales;
    - They intentionally avoided online and in-store sales;
    - They used the product name for advertising but refused to properly sell the product.

When I tried to cancel the agreement after years of nonperformance, they obtained an injunction by falsely telling the Québec court that the product was "mission critical" and that they had invested millions of dollars.

The testimony now proves that was false.

This was never a good faith effort to sell a product. It was a deliberate plan to:

- Sabotage my patented design (see Exhibit U-11);
- Block sales through inflated pricing;
- Exploit my invention to mislead consumers;
- Hold my IP hostage without paying me wages, royalties, or purchase price.

## V. PUBLIC INTEREST AND SYSTEMIC HARM

Plaintiff's shutter system was not merely a commercial product. It was a life-saving innovation designed to eliminate the risk of child strangulation caused by corded window coverings—one of the leading in-home hazards for toddlers and infants. The technology at issue incorporates a

5

cordless, modular design that exceeds national safety standards, with validated use in the field and commercial success through partners like Decorating USA.

In addition to child safety, the shutter system was engineered for domestic manufacturing and distribution using locally sourced materials and a plug-and-play assembly method, empowering small businesses across hundreds of U.S. and Canadian cities to compete directly with low-cost imported blinds and PVC products from China. The technology delivered not only enhanced safety and energy efficiency, but also offered a new pathway for job creation, regional sustainability, and fair market access for independent fabricators.

By suppressing this innovation, Defendants not only deprived Plaintiff of compensation, but blocked a validated, affordable alternative to unsafe products, misled consumers through false advertising, and preserved their own reliance on offshore supply chains at the expense of public welfare.

This case is not simply about a commercial dispute—it is about protecting American innovation, restoring access to a safety-forward product, and preventing further exploitation of court process to suppress meaningful advancements in public health, local industry, and environmental compliance.

---

Respectfully submitted,

David W. Blachley, Pro Se Plaintiff

Dated: June 16, 2025